## Gerwig v. The W. J. Johnston Company, Appellant.

*Appeals—Assignments of error—Evidence—Reference to page of paper-book.*

An assignment of error to the admission of testimony, which fails to set forth the name of the witness, or the number of the page of the paper-book where the testimony may be found in its regular order, does not comply with Rule 31 of the Supreme Court, and will not be considered.

*Negligence—Flooding of building—Trespass—Damages—Punitive damages.*

In an action of trespass to recover damages for injuries to goods, it appeared that plaintiff and defendant, the latter being a corporation, were both engaged in the same business, the defendant occupying the fifth floor of a building and the plaintiff the fourth floor. The testimony showed that the defendant maintained barrels connected with a drainage pipe. Dirt, oil and grease were allowed to accumulate in the barrels, and to overflow into the pipe, clogging it, and causing an overflow of water in the barrels. This water was carried to the fourth floor and injured plaintiff's goods. There was evidence that the president and foreman of the defendant company knew of the overflows, and permitted them to continue during a spring, summer and fall. There was also evidence that the overflow was intentional and was for the purpose of compelling plaintiff to leave the building. This he subsequently did, and the defendant took the floor thus vacated. *Held,* that a judgment and verdict for plaintiff for the amount of the loss and for punitive damages should be sustained.

Argued Nov. 4, 1903. Appeal, No. 142, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1902, No. 613, on verdict for plaintiff in case of A. H. Gerwig v. The W. J. Johnston Company. Before MITCH-ELL, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass to recover damages to goods. Before BROWN, J.
The facts are stated in the opinion of the Supreme Court.
Verdict and judgment for plaintiff for $1,883.22 of which $500 was punitive damages.

*Error assigned* was in submitting the case to the jury, and instructing them that they might find punitive damages if the

injuries resulted from a wilful intent to injure, or a reckless indifference to plaintiff's rights.

*H. L. Castle,* of *Stone & Stone,* for appellant, cited on the question of punitive damages : Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306 ; Lake Shore, etc., Ry. Co. v. Rosenzweig, 113 Pa. 519; Philadelphia Traction Co. v. Orbann, 119 Pa. 37.

*G. K. Wright,* with him *A. H. Mercer,* for appellee, cited: Huling v. Henderson, 161 Pa. 553.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904 :

Rule 31 of this court provides, inter alia, that when error is assigned to the admission of evidence the specification must quote the offer and the testimony admitted, " together with a reference to the page of the paper-book where the matter may be found in its regular order in the printed evidence or notes of trial. . . . Any assignment of error not according to this and the last rule will be disregarded." The fourth specification alleges error " in admitting the following testimony set out on page   , in the appendix," without giving the name of the witness or the page where the testimony may be found in the appendix. The fifth assignment alleges that the court below erred " in admitting the testimony under the following offer made by counsel for the plaintiff, upon page   , of the appendix," which likewise neglects to give the name of the witness and the page of the paper-book where the testimony may be found. Both of these assignments are in clear violation of the rule and must therefore be disregarded. Blank paging is no paging and fails to give the information which the rule specifically provides shall be given. The consideration of alleged error in the admission of testimony requires us to examine the testimony in the record and, frequently, in connection with the other testimony of the witness. Hence the specification should name the witness and give a reference to the page of the paper-book where the testimony may be found. The members of this court should not be expected to relieve counsel from the performance of their duty in this respect by searching the appendix for the objectionable offer or testimony, and es-

pecially when, as here, the appendix contains over 300 pages of printed matter. As we have frequently said, counsel violate the rules of the court at their peril, which, it may be added, includes responsibility to their clients.

We are clearly of opinion that the other specifications of error are without merit. If the jury believed the testimony introduced on the part of the plaintiff, corroborated in some respects by the defendant's evidence, they were fully justified in finding that the negligence of the defendant company's servants caused the injurious floods to flow to the plaintiff's premises and that their action in so doing was wilful and with a reckless disregard to the plaintiff's rights. The first and one of the large floods was in February or March, 1901; and at frequent intervals in the succeeding months until plaintiff was compelled to abandon the premises in the following December, the water in small or large quantities flowed from the fifth floor, occupied and used by the defendant company, to the fourth floor of the building on which the plaintiff carried on his jewelry business. This water was polluted with dirt, grease and oil, principally the refuse from the polishing material used in the defendant's business, but partly from the washing of the hands and of the clothes of the defendant's employees. The flooding of the plaintiff's premises was caused by the overflow of the barrels placed under the sinks, and this was occasioned by the dirt, oil and grease clogging the pipe connecting the barrels and leading from them into the drainage or sewer pipe. The polishing material was of a sticky, oily substance and that with the grease and dirt washed from the hands and clothes of the employees went to the bottom of the barrels and as soon as a sufficient quantity had accumulated there to reach the mouth of the pipe, which was near the bottom of the first barrel, it was carried into the pipe and clogged it, resulting in the overflow of the water in the barrel. It appears from the defendant's testimony that the barrels were not cleaned once in six months. The necessary result of permitting this material to accumulate in the bottom of the barrel was to stop the pipe and cause the barrel to overflow and its contents to be carried to the fourth floor where, if the testimony is believed, it not only injured the rooms occupied by the plaintiff but his goods as well, to the extent even of compelling him to abandon the premises. Both the cause

and the effect of the flooding of the plaintiff's rooms were apparent to the defendant company's servants. Whether their conduct under the circumstances was negligent was clearly for the jury and the question was properly submitted by the trial judge in the following portion of the charge: " He (the plaintiff) must show, not merely that water from above came down upon his premises, but that it came from defendant's premises, and from causes within the control of the defendant's agents, and that from want of reasonable care upon the part of such agents the overflows occurred and the damages resulted. If the evidence fails to disclose both the source and cause of the overflows, source and cause traced to the defendant's agents, there can be no recovery in the case, and the verdict should be in favor of the defendant. The defendant would not be responsible for the overflow caused by rats getting into the drain pipe, and it would not be responsible for negligent or intentional acts of persons over whom it had no control. Its responsibility rests solely upon the negligent acts, if any, of its agents."

We also think there was sufficient evidence to submit to the jury on the question of punitive damages. The president of the defendant company as well as the foreman in charge of its business on the fifth floor of the Verner building knew of the flooding of the plaintiff's premises during the several months in which it occurred. It took place frequently and always resulted in more or less damage to the plaintiff's goods on the fourth floor of the building. The fact that the injurious acts occurred, with no attempt to prevent them, from time to time during the spring, summer and fall of 1901 with defendant's knowledge on each occasion of the injury done, discloses recklessness and a wilful intention on the part of the defendant to injure the plaintiff. But more than this, giving credence to the testimony which was the province of the jury, the declarations of the president of the company and of its foreman showed clearly that the acts of the defendant's servants, done with its knowledge, resulting in injury to the plaintiff, were for the purpose of compelling him to leave the building. He left the building and the defendant company, which was engaged in the same business and occupied the floor above and below him, immediately moved into, and occupied, the floor vacated by the plaintiff. All the facts were for the jury and they having

found, on sufficient evidence, that the injury to the plaintiff's goods and business by the defendant company was intentional and with a wanton disregard of his rights we are not disposed to interfere with the verdict.

The judgment is affirmed.